CR 14 - 00399 ROSS, J.

SC:WMP/WMN/SCJ
F. #2013R01203

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X                    SCANLON, M.J.

UNITED STATES OF AMERICA                              I N D I C T M E N T

    - against -                                   Cr. No. _____
                                                      (T. 15, U.S.C., §§ 78j(b) and 78ff;
ABRAXAS J. DISCALA,                                   T. 18, U.S.C., §§ 371, 981(a)(1)(C),
    also known as "AJ Discala,"                  1343, 1349, 2 and 3551 et seq.;
MARC WEXLER,                                          T. 21, U.S.C., § 853(p); T. 28,
IRA SHAPIRO,                                          U.S.C., § 2461(c))
MATTHEW BELL,
CRAIG JOSEPHBERG,
    also known as "Jobo,"
KYLEEN CANE and
VICTOR AZRAK,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    The Defendants and Relevant Entities

        1.    The defendant ABRAXAS J. DISCALA, also known as "AJ Discala," a

resident of Rowayton, Connecticut, was the Chief Executive Officer of OmniView Capital

Advisors LLC ("OmniView"). DISCALA formed OmniView on or about February 3, 2011.

DISCALA also controlled The Broadsmoore Group LLC ("Broadsmoore") and Fidelis Holdings,

LLC ("Fidelis").

2.     OmniView was a Delaware limited liability company with its principal place of business in Rowayton, Connecticut, and an office in New York, New York. OmniView marketed itself as a merchant bank that sought to create partnerships with companies that were fundamentally sound in order to provide required capital and strategic advice. OmniView claimed to possess a team of seasoned professionals who had extensive knowledge of the capital markets, including having: (i) experience in raising capital through private placements, alternative public offerings and reverse takeovers of companies whose shares were traded on the Over-the-Counter ("OTC") exchanges; (ii) substantial contacts to bolster management boards; and (iii) a model that prevented any conflicts of interest between OmniView, investors and the target companies.

3.     The defendant MARC WEXLER, a resident of Colts Neck, New Jersey, was the Managing Director of OmniView.

4.     The defendant IRA SHAPIRO, a resident of Congers, New York, was the Chief Executive Officer and Chairman of the Board of CodeSmart Holdings, Inc. ("CodeSmart") and First Independence Corp. ("First Independence").

5.     The defendant MATTHEW BELL, a resident of Helotes, Texas, was a registered broker and investment adviser representative. In or about and between October 2009 and December 2013, BELL was employed as an investment adviser representative by IA Firm 1, an investment adviser firm registered with the United States Securities and Exchange Commission ("SEC"). In or about and between July 2009 and June 2013, BELL was also employed as a broker by BD Firm 1, a broker-dealer registered with the SEC and the Financial Industry Regulatory Authority, Inc. ("FINRA"), at its office in San Antonio, Texas. In or about

and between August 2013 and October 2013, BELL was employed as a broker by BD Firm 2, a broker-dealer registered with the SEC and FINRA, at its office in San Antonio, Texas.

6.      The defendant CRAIG JOSEPHBERG, also known as "Jobo," a resident of New York, New York, was registered as a broker.  In or about and between November 2010 and October 2013, JOSEPHBERG was employed as a broker by BD Firm 3, a broker-dealer registered with the SEC and FINRA, at its office in New York, New York.  In or about and between October 2013 and June 2014, JOSEPHBERG was employed as a broker by BD Firm 4, a broker-dealer registered with the SEC and FINRA, at its office in New York, New York. JOSEPHBERG also controlled Garper LLC ("Garper"), a Delaware limited liability company with its principal place of business in New York, New York.

7.      The defendant KYLEEN CANE, an attorney and resident of Las Vegas, Nevada, was the managing partner of Cane Clark LLP, a law firm that purportedly specialized in providing corporate and securities legal services to public companies with small capitalization.

8.      The defendant VICTOR AZRAK, a resident of New York, New York, was the Vice President and Director of Excel Corp. ("EXCC"), a publicly traded Delaware company with its principal place of business in New York, New York.

II.      The Relevant Publicly Traded Companies

9.      CodeSmart, formerly First Independence, was a Florida corporation with its principal place of business in New York, New York.  CodeSmart traded under the ticker symbol ITEN.  CodeSmart's purported business plan consisted of furnishing the healthcare industry with educated, trained and qualified "ICD-10" certified coders.  ICD-10, the tenth revision of the International Statistical Classification of Diseases and Related Health Problems, a medical classification list created by the World Health Organization, was the medical coding

3

system mandated by the Centers for Medicare and Medicaid Services as part of the Patient Protection and Affordable Care Act of 2010. CodeSmart offered "CodeSmart University" as "an online program of study for existing coders, new coders, clinicians and healthcare roles of all types."

10.     Cubed, Inc. ("Cubed"), formerly a mining exploration company known as Northwest Resources, Inc. ("Northwest"), was a Nevada corporation with its principal place of business in Las Vegas, Nevada. Cubed traded under the ticker symbol CRPT. Cubed's purported business plan involved the "Get CUBED" mobile-first platform, which Cubed claimed was "a cloud-based, three-dimensional functional cube that appears on the screens of mobile device owners, allowing developers and users to present complex and contextual concepts in a clear and simple manner."

11.     StarStream Entertainment Inc. ("StarStream"), formerly Gelia Group, Corp., was a Nevada corporation with its principal place of business in Monterey, California. StarStream traded under the ticker symbol SSET. StarStream's purported business plan consisted of producing, promoting, supporting and developing motion pictures and funding motion picture entities.

12.     The Staffing Group, Ltd. ("Staffing Group"), formerly Aviana, Corp., was a Nevada corporation with its principal place of business in New Orleans, Louisiana. Staffing Group traded under the ticker symbol TSGL. Staffing Group's purported business plan consisted of recruiting, hiring, employing and managing skilled workers for its clients.

III.    The Fraudulent Market Manipulation Schemes

13.     In or about and between October 2012 and July 2014, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, IRA SHAPIRO,

4

MATTHEW BELL, CRAIG JOSEPHBERG, also known as "Jobo," KYLEEN CANE and

VICTOR AZRAK, together with others, agreed to defraud investors and potential investors in

CodeSmart, Cubed, StarStream and Staffing Group (collectively, the "Manipulated Public

Companies") by artificially controlling the price and volume of traded shares in the Manipulated

Public Companies through, inter alia: (a) false and misleading press releases; (b) false and

misleading SEC filings; (c) fraudulent concealment of the defendants' and their co-conspirators'

ownership interests; (d) engineering price movements and trading volume in the stocks; and (e)

unauthorized purchases of stock in accounts of unwitting investors.

     A.    The CodeSmart Manipulation Scheme

        (i)    Control of the Unrestricted Stock

     14.    In April 2012, First Independence filed a Form S-1 with the SEC to

register an offering of 3,000,000 shares of its stock, which was made effective on August 7,

2012. In or about January 2013, despite projecting an extremely pessimistic outlook in prior

SEC filings, First Independence sold its entire lot of 3,000,000 unrestricted or free trading shares

to twenty-four shareholders, based primarily in Florida, for $0.0115 per share, raising $34,500

for the company. The 3,000,000 shares were registered with First Independence's transfer agent

on February 7, 2013. From February 2013 to April 2013, there was no public trading of First

Independence's stock. On or about May 3, 2013, CodeSmart, a private company, was acquired

by First Independence, a shell public company, in a reverse merger. Following the reverse

merger, the new company operated under the CodeSmart name.

     15.    In or about May 2013, the defendants ABRAXAS J. DISCALA, also

known as "AJ Discala," MARC WEXLER, MATTHEW BELL and CRAIG JOSEPHBERG,

also known as "Jobo," together with others, purchased the 3,000,000 unrestricted shares at

$0.023 per share from the aforementioned twenty-four shareholders. The new stock certificates were sent to Attorney 1, a New York attorney associated with DISCALA whose identity is known to the Grand Jury. The defendants and their co-conspirators concealed their ownership interest in the 3,000,000 unrestricted shares by distributing the shares across a number of co-conspirators and by placing them in nominee accounts designed to conceal the true owners of the shares. On June 14, 2013, CodeSmart implemented a 2-for-1 forward stock split of its common stock which caused the 3,000,000 shares controlled by DISCALA and his co-conspirators to double to 6,000,000 shares.

(ii)    The Fraudulent Stock Manipulations

16.    After gaining control of CodeSmart's unrestricted shares, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, IRA SHAPIRO, MATTHEW BELL and CRAIG JOSEPHBERG, also known as "Jobo," together with others (collectively, the "CodeSmart Co-Conspirators"), devised a scheme whereby they fraudulently inflated CodeSmart's share price and trading volume and then sold the unrestricted CodeSmart stock at a profit when the share price reached desirable levels. Such a scheme is commonly referred to as a "pump and dump."

17.    The first pump and dump occurred between approximately May 13, 2013 and August 21, 2013. During this first period, the CodeSmart Co-Conspirators manipulated CodeSmart's stock price by raising it from $1.77 to a high of $6.94, before causing it to drop to $2.19.

18.    The second pump and dump occurred between approximately August 21, 2013 and September 20, 2013. During this second period, the CodeSmart Co-Conspirators

6

manipulated CodeSmart's stock price by raising it from $2.19 to a high of $4.60, before causing it drop to $2.13.

19.     CodeSmart's market capitalization at its highest closing price of $6.94 per share on July 12, 2013 was $86,347,800.  However, that same day, CodeSmart filed with the SEC an amended Form 10-K, signed by SHAPIRO, in which CodeSmart listed only $6,000 in total assets, $7,600 in revenue and a net loss of $103,141.  By December 30, 2013, CodeSmart's stock was trading at $0.66 per share, and on July 9, 2014, CodeSmart's stock closed at $0.01 per share.

20.     In furtherance of the CodeSmart stock manipulation scheme, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, IRA SHAPIRO, MATTHEW BELL and CRAIG JOSEPHBERG, also known as "Jobo," together with others, coordinated their trading activity with the issuance of company press releases, a number of which contained false and misleading information.  These press releases, which touted agreements between CodeSmart and various universities and learning institutions, were issued at an accelerated rate in an effort to generate market interest in the stock.

21.     On or about May 28, 2013, CodeSmart issued a press release which stated, in part, that "its CodeSmart University product is the exclusive strategic partner for ICD-10 education and consulting services to Binghamton University, part of the State University of New York ('SUNY') system, which will exclusively market and provide CodeSmart University products to their students in the School for Continuing Education."  Contrary to this representation, CodeSmart was not the "exclusive strategic partner" for ICD-10 education courses at Binghamton University because Binghamton University also offered courses through other providers and had no plans to exclusively market CodeSmart University to its students.

Upon issuance of this press release, the trading volume of CodeSmart's shares surged to 316,000 compared to 122,400 the trading day before the press release.

22. In furtherance of the CodeSmart stock manipulation scheme, during the first pump and dump period, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, IRA SHAPIRO, MATTHEW BELL and CRAIG JOSEPHBERG, also known as "Jobo," together with others, filed and caused to be filed with the SEC forms that contained material misrepresentations and omissions. For example, on July 12, 2013, the day CodeSmart's stock closed at its highest share price of $6.94, CodeSmart filed with the SEC an amended Form 8-K, signed by SHAPIRO, in which CodeSmart estimated "about $10 million in revenues over the following 12 months from the date of this Report." On August 19, 2013, approximately one month later and the day CodeSmart's stock price had dropped dramatically to $2.50 per share, CodeSmart filed with the SEC a Form 10-Q, signed by SHAPIRO, which stated that the company did "not have sufficient funds to fully implement [its] business plan," and that, if they did not obtain the funds, CodeSmart "may need to curtail or cease [its] operations until such time as [it has] sufficient funds."

23. In furtherance of the CodeSmart stock manipulation scheme, during the second pump and dump period, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, IRA SHAPIRO, MATTHEW BELL and CRAIG JOSEPHBERG, also known as "Jobo," together with others, filed and caused to be filed with the SEC forms that contained material misrepresentations and omissions. For example, on August 26, 2013, at a time when CodeSmart's stock was rising and closed at $3.10 per share, CodeSmart filed with the SEC a Form 8-K, signed by SHAPIRO, in which SHAPIRO stated, "If we continue on the track we are on, I believe we will achieve our revenue and profit goals that were previously disclosed

8

for 2013 and beyond." The next day, on August 27, 2013, CodeSmart filed with the SEC a Form

8-K, signed by SHAPIRO, in which CodeSmart announced that CodeSmart's Chief Executive

Officer, SHAPIRO, had purchased 25,000 shares of the company's stock from the public market

at the market value of $3.21 per share for a cost of $80,250. In this SEC filing, SHAPIRO

extolled his purchase of CodeSmart stock and stated that his "stock purchase [was] symbolic of

[his] confidence in the Company and its mission." In reality, SHAPIRO did not pay for the

25,000 CodeSmart shares purchased in his brokerage account. On September 4, 2013, the same

day that SHAPIRO paid $81,278 from his personal bank account to his brokerage firm for the

25,000 shares of CodeSmart, DISCALA directed the transfer of $81,278 from Fidelis' bank

account, which DISCALA controlled, to SHAPIRO's personal bank account.

(iii)    <u>Profits at Investors' Expense</u>

24.    The defendants ABRAXAS J. DISCALA, also known as "AJ Discala,"

MARC WEXLER, MATTHEW BELL and CRAIG JOSEPHBERG, also known as "Jobo,"

together with others, profited by selling CodeSmart stock, issued to them at pennies, to BELL's

clients at IA Firm 1 and JOSEPHBERG's customers at BD Firm 3. On some occasions,

DISCALA, WEXLER, BELL and JOSEPHBERG, together with others, sold CodeSmart shares

to BELL's clients at IA Firm 1 and JOSEPHBERG's customers at BD Firm 3 without their

clients' and customers' knowledge and consent and without providing them with required

disclosure documents.

25.    At the same time that the defendant MATTHEW BELL, together with

others, was purchasing CodeSmart stock in IA Firm 1's clients' accounts, BELL was selling

CodeSmart shares in his personal trading account. Specifically, in or about and between May

2013 and October 2013, IA Firm 1's clients purchased approximately one million shares of

9

CodeSmart, while BELL sold approximately 99,500 of the 125,000 free trading or unrestricted shares of CodeSmart in his personal brokerage account. Nearly half of the one million CodeSmart shares purchased in IA Firm 1's clients' accounts were purchased in Individual Retirement Accounts ("IRAs").

26.    At the same time that the defendant CRAIG JOSEPHBERG, also known as "Jobo," together with others, was purchasing CodeSmart stock in BD Firm 3's customers' accounts, JOSEPHBERG was selling CodeSmart stock in Garper's brokerage accounts. Specifically, in or about and between May 2013 and October 2013, BD Firm 3's customers purchased approximately 140,000 shares of CodeSmart, while JOSEPHBERG sold approximately 256,000 shares of CodeSmart stock in Garper's brokerage accounts.

27.    On or about and between May 13, 2013 and August 7, 2013 alone, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, MATTHEW BELL and CRAIG JOSEPHBERG, also known as "Jobo," sold approximately 834,472 shares of CodeSmart in their personal accounts while BELL and JOSEPHBERG purchased 814,827 shares of CodeSmart in their clients' and customers' accounts.

28.    The defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, IRA SHAPIRO, MATTHEW BELL and CRAIG JOSEPHBERG, also known as "Jobo," profited through their fraudulent manipulation of CodeSmart's stock. The defendants profited as follows: (a) DISCALA profited at least $3 million from trading CodeSmart's stock, which included $600,000 in profit from an account held in his administrative assistant's name; (b) WEXLER profited at least $2.2 million; (c) BELL profited at least $550,000; (d) JOSEPHBERG profited at least $750,000; and (e) SHAPIRO was paid an annual salary of approximately $225,000.

B.    The Cubed Manipulation Scheme

(i)    The Formation of Cubed

29.    On March 6, 2014, Northwest, a shell public company with only nominal assets and no revenues, appointed John Doe 1, an individual whose identity is known to the Grand Jury, the President and Chief Operating Officer of Crackpot, Inc. ("Crackpot"), a private company, as its sole officer and director.  Crackpot marketed itself as a "developer of a mobile-first information communications technology that offers users a digital platform for the creation of content that combines text, images, audio, and video."  A week later, on March 14, 2014, Northwest filed with the SEC a Form 8-K explaining that Northwest had changed its name to Cubed.

30.    On March 24, 2014, Cubed filed with the SEC a Form 8-K stating that it had entered into an intellectual property purchase agreement (the "Asset Purchase Agreement") with Crackpot pursuant to which it acquired intellectual property, specifically a "mobile-first platform," from Crackpot.  In exchange for this intellectual property, Cubed agreed to pay Crackpot $350,000 and 2,537,455 restricted shares of Cubed.  Cubed had no assets and was a penny stock at the time of the Asset Purchase Agreement.  Through this Asset Purchase Agreement, Crackpot, a private company, effectively became Cubed, a public company.  On March 26, 2014, Cubed's board of directors appointed John Doe 2, an individual whose identity is known to the Grand Jury, the original founder of Crackpot, as the new Chief Executive Officer and President, replacing John Doe 1.

(ii)    The Fraudulent Stock Manipulation

31.    On March 28, 2014, 200 shares of Cubed were sold at $5.00 per share. Based on the $5.00 share price and its outstanding common stock, Cubed had a market

capitalization of approximately $150 million. On April 22, 2014, after 15 days of no trading activity, Cubed's stock began trading in earnest at a price of $5.25; the stock closed that day at $5.20.

32.     On or about and between April 22, 2014 and April 30, 2014, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, MATTHEW BELL, CRAIG JOSEPHBERG, also known as "Jobo," KYLEEN CANE and VICTOR AZRAK, together with others (collectively, the "Cubed Co-Conspirators"), were responsible for manipulating the vast majority of the trading activity in Cubed. Specifically, the Cubed Co-Conspirators purchased more than 50% of the total number of Cubed shares purchased during this period. The Cubed Co-Conspirators used BD Firm 4, where JOSEPHBERG was employed, to execute these fraudulent trades.

33.     In or about and between March 2014 and July 2014, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, MATTHEW BELL, CRAIG JOSEPHBERG, also known as "Jobo," KYLEEN CANE and VICTOR AZRAK, together with others, devised a scheme whereby they fraudulently manipulated Cubed's stock by artificially controlling the price and volume of Cubed's stock through, inter alia, wash trades and match trades.

34.     Wash trades are purchases and sales of securities that match each other in price, volume and time of execution, and involve no change in beneficial ownership. For example, a wash trade takes place when Investor A buys 100 shares at $5.00 of Company A through Broker A while simultaneously selling 100 shares at $5.00 of Company A through Broker B. Match trades are similar to wash trades but involve a related third person or party who places one side of the trade. For example, a match trade takes place when Investor A buys 100

12

shares at $5.00 of Company A through a broker, while Investor B, who coordinates with Investor A, simultaneous sells 100 shares at $5.00 of Company A through a broker. Both wash trades and match trades are used to create the appearance that the stock price rose as a result of genuine market demand for the securities.

35.     On or about and between May 2, 2014 and June 29, 2014, law enforcement authorities conducted a judicially-authorized wiretap of the defendant ABRAXAS J. DISCALA's, also known as "AJ Discala," cellular telephone (the "Discala Wiretap"). The Discala Wiretap revealed that the Cubed Co-Conspirators used wash trades and match trades to manipulate Cubed's stock price and volume. Rather than generating significant market interest and causing a quick pump and dump that would elicit regulators' scrutiny, the Cubed Co-Conspirators engaged in a scheme that gradually increased the price of Cubed's stock to give it the appearance of a legitimate company with genuine and steady market demand for the security.

36.     For example, on or about and between April 22, 2014 and May 22, 2014, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, MATTHEW BELL, CRAIG JOSEPHBERG, also known as "Jobo," KYLEEN CANE and VICTOR AZRAK, together with others, successfully manipulated Cubed's stock, causing its share price to gradually increase from a closing price of $5.20 on April 22, 2014 to a closing price of $5.42 on May 22, 2014. During this period, DISCALA controlled the fraudulent manipulation of Cubed's stock by directing the price and volume of Cubed's shares traded on the market. For example, on May 6, 2014, DISCALA sent a text message to JOSEPHBERG stating, "Go 531. Please." That day, Cubed's stock closed at $5.32 per share.

(iii)    The Escrow Account

37.    To successfully execute their fraudulent scheme of causing a controlled

rise of Cubed's stock, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala,"

MARC WEXLER, MATTHEW BELL, CRAIG JOSEPHBERG, also known as "Jobo,"

KYLEEN CANE and VICTOR AZRAK, together with others, used an escrow account that was

maintained by CANE to manipulate the price and volume of Cubed's stock.  For example, on

May 13, 2014, while discussing Cubed, BELL sent a text message to DISCALA, and asked,

"How[']s the escrow going[?]," to which DISCALA responded, "Need sales.  Need buyers."  On

May 20, 2014, during a telephone call between DISCALA and AZRAK, after discussing a

conversation between JOSEPHBERG and CANE about the escrow account, DISCALA

explained his control over Cubed's share price, and stated, in part, "I'm the [expletive] brake and

the gas, [expletive].  If I take my foot off the brake it's 55 [dollars] tomorrow (Laughter)."

38.    On May 23, 2014, due to poor coordination with a co-conspirator, the

defendant ABRAXAS J. DISCALA, also known as "AJ Discala," briefly lost control of his

manipulation of Cubed's share price, which caused it to surge from the previous day's closing

price of $5.42 to an intraday high of $7.05 per share.  However, as explained below, DISCALA

regained control that same day and brought the share price back down to have it close at $6.30

per share.

39.    During three telephone calls that day, May 23, 2014, the defendant

ABRAXAS J. DISCALA's, also known as "AJ Discala," control of the price of Cubed's stock is

apparent.  During a telephone call that morning, DISCALA and the defendant KYLEEN CANE

discussed the jump in Cubed's price to $7 per share, and CANE stated, in part, "We need to keep

it back down now.  We need to keep it back down."  Later that day, during a telephone call

14

between DISCALA and the defendant VICTOR AZRAK, DISCALA stated, in part, "I talked to Kyleen [CANE], and we, we don't want this. We would want 6.35 today, 6.30, something like that, and then let, let news rip it next week." Finally, DISCALA also called the defendant MARC WEXLER to explain the trading in Cubed's share price, and stated, in part, "Yeah like...it just looks stupid! It went up, and up, and then it came back, you know – it's like, look, if we ended at 6.30, we're good. I wanna bring it back up to 6.55; 6.55 on Tuesday, which I can, with some news, right? And just keep stepping it."

40.     The defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, MATTHEW BELL, CRAIG JOSEPHBERG, also known as "Jobo," KYLEEN CANE and VICTOR AZRAK, together with others, are continuing to fraudulently manipulate Cubed's stock using the escrow account. On June 23, 2014, Cubed reached its highest closing price of $6.75 per share. At $6.75 per share, Cubed's market capitalization was approximately $200 million. On April 21, 2014, however, Cubed filed with the SEC a Form 10-Q and reported less than $1,500 in cash, zero revenue, negative stockholders' equity, a net loss of $15,000 and accrued professional fees of $131,824. On July 9, 2014, Cubed's stock price closed at $6.60 per share and was, thus, still in the controlled pump phase of the fraudulent manipulation scheme orchestrated by the Cubed Co-Conspirators.

C.     The StarStream and Staffing Group Manipulation Schemes

41.     In or about and between October 2013 and July 2014, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, MATTHEW BELL, CRAIG JOSEPHBERG, also known as "Jobo," KYLEEN CANE and VICTOR AZRAK, together with others, agreed to fraudulently manipulate StarStream's and Staffing Group's stocks

by artificially controlling the price and volume of StarStream's and Staffing Group's stocks through, inter alia, wash trades and match trades.

        (i)      The StarStream Manipulation

      42.     In furtherance of the scheme to manipulate StarStream's stock, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, MATTHEW BELL, CRAIG JOSEPHBERG, also known as "Jobo," KYLEEN CANE and VICTOR AZRAK, together with others, coordinated the fraudulent buying and selling of StarStream's stock through the use of, inter alia, text messages and telephone calls.

      43.     On May 7, 2014, WEXLER sent a text message to DISCALA, stating, "We may need to buy SSET at close. I think EJA has some $. Got get it to 15 cents. LOL what a joke." That day, StarStream's stock price closed at $0.30 on 41,100 trading volume, a significant decrease from the previous day's closing price of $0.48 on 16,200 trading volume. The following day, on May 8, 2014, StarStream's stock price closed at $0.15 per share, exactly the price proposed by WEXLER.

      44.     On May 13, 2014, before trading commenced, the defendant ABRAXAS J. DISCALA, also known as "AJ Discala," sent a text message to the defendant MATTHEW BELL, stating, "We got good stuff going. Sset. Should be over a buck today." That day, StarStream's stock price, which opened at $0.35 per share, reached an intraday high of $1.05 per share, before closing at $0.80 per share.

        (ii)     The Staffing Group Manipulation

      45.     In furtherance of the scheme to manipulate Staffing Group's stock, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, MATTHEW BELL, CRAIG JOSEPHBERG, also known as "Jobo," KYLEEN CANE and

VICTOR AZRAK, together with others, coordinated the fraudulent buying and selling of Staffing Group's stock through the use of, <u>inter alia</u>, text messages and telephone calls.

46.    On May 7, 2014, BELL sent a text message to DISCALA, stating, "TSGL is tanking. We still good?"  In response, DISCALA stated, "Yes. Buy all u can at 20 or better.  We're cleaning it up."  On May 7, 2014, Staffing Group's stock price closed at $0.25 on 178,300 trading volume, a significant decrease from the previous day's closing price of $0.36 on no trading volume.

47.    On May 16, 2014, the defendant ABRAXAS J. DISCALA, also known as "AJ Discala," sent a text message to the defendant CRAIG JOSEPHBERG, also known as "Jobo," stating, "Call in victors [AZRAK] tsgl.  Supposed to be good til cancel. This shot affects us."  On May 16, 2014, the trading volume in the Staffing Group was 13,500 compared to 1,700 on the previous trading day and 2,500 on the following trading day.

48.    On May 30, 2014, the defendant ABRAXAS J. DISCALA, also known as "AJ Discala," sent a text message to the defendant MARC WEXLER, stating, "Buy 5k more ts [TSGL] market im gonna get this thing flying."  On May 30, 2014, Staffing Group's stock price closed at $0.42 per share on 187,300 trading volume, which was almost double the closing price of $0.23 on 6,000 trading volume on the previous day.

COUNT ONE
(Conspiracy to Commit Securities Fraud –
the Manipulated Public Companies)

49.    The allegations contained in paragraphs one through forty-eight are realleged and incorporated as though fully set forth in this paragraph.

50.    In or about and between October 2012 and July 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, IRA

SHAPIRO, MATTHEW BELL, CRAIG JOSEPHBERG, also known as "Jobo," KYLEEN

CANE and VICTOR AZRAK, together with others, did knowingly and willfully conspire to use

and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the

Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code

of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to

defraud; (b) making untrue statements of material fact and omitting to state material facts

necessary in order to make the statements made, in light of the circumstances under which they

were made, not misleading; and (c) engaging in acts, practices and courses of business which

would and did operate as a fraud and deceit upon investors and potential investors in the

Manipulated Public Companies, in connection with the purchase and sale of investments in the

Manipulated Public Companies, directly and indirectly, by use of means and instrumentalities of

interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and

78ff.

      51.    In furtherance of the conspiracy and to effect its objects, within the

Eastern District of New York and elsewhere, the defendants ABRAXAS J. DISCALA, also

known as "AJ Discala," MARC WEXLER, IRA SHAPIRO, MATTHEW BELL, CRAIG

JOSEPHBERG, also known as "Jobo," KYLEEN CANE and VICTOR AZRAK, together with

others, committed and caused to be committed, among others, the following:

OVERT ACTS

      a.    On or about June 4, 2013, SHAPIRO sent an email to John Doe 3,

a representative of Ramapo College of New Jersey whose identity is known to the Grand Jury,

copying two of SHAPIRO's colleagues, whose identities are known to the Grand Jury, and

18

stated, in part, "My apologies on behalf of CODESMART. We did not know about that language you [sic] were allowed to use and certainly will consult with you next time we do a promotion. This is all done in a spirit of promoting business opportunities for you as a partner."

b.     On or about July 22, 2013, WEXLER and BELL entered into a purchase agreement whereby WEXLER sold BELL 50,000 shares of CodeSmart common stock for $28,000 at a purchase price of $0.56 per share.

c.     On or about August 15, 2013, DISCALA signed a purchase agreement on behalf of Fidelis whereby he sold 25,000 shares of CodeSmart common stock to Victim 1, an individual whose identity is known to the Grand Jury, for $3,500 at a purchase price of $0.14 per share.

d.     On or about August 27, 2013, SHAPIRO filed with the SEC a Form 8-K on behalf of CodeSmart and stated that he had purchased 25,000 shares of the company's stock from the public market at the market value of $3.21 per share for a cost of $80,250.

e.     On or about April 11, 2014, BELL sent a text message to DISCALA, stating, "FedEx send you money for cube on Monday. Made out to Omniview."

f.     On or about May 12, 2014, during a telephone call between DISCALA and AZRAK, AZRAK stated, in part, "We should start sending [JOSEPHBERG] morons, by the way. We could trade for free, you know, send him a moron, you know, a guy you don't know and then we'll just buy stocks and if they don't go up by the end, we'll buy, like, options – Twitter options – that expire in, like, a day. Either we'll make like twenty times or we'll just give him the stock."

g.      On or about May 17, 2014, during a telephone call between DISCALA and WEXLER, DISCALA stated, in part, "So our deal is going to pay the Cube two-fifty, cause these guys can't generate revenue, so I'm going to generate it myself."

h.      On or about May 20, 2014, during a telephone call between DISCALA and AZRAK, DISCALA stated, in part, "Right, because I'm the [expletive] brake and the gas, [expletive].  If I take my foot off the brake it's 55 [dollars] tomorrow (Laughter)."

i.      On or about May 21, 2014, during a telephone call between DISCALA and CANE, CANE stated, in part, "You know [the Investor Relations/Public Relations guys are] going to be doing it and I also just talked to two people that are gonna probably going to put in another half a million into Cubed for some interim, interim money."

j.      On or about May 22, 2014, during a telephone call between DISCALA and JOSEPHBERG, JOSEPHBERG stated, in part, "I don't want to be the only one buying today.  I heard it looks very bad for a broker to be the only one buying, that's what I heard."

k.      On or about May 27, 2014, during a telephone call between DISCALA and CANE, CANE stated, in part, "Well it's um, it's gonna start happening . . . I don't know if the press has even come out yet.  There's gonna be a release today . . . on the . . . acquisition . . . we're having a conference call in about 30 minutes with the first PR that's gonna go out – the PR group."

l.      On or about June 6, 2014, during a telephone call between DISCALA and WEXLER, WEXLER stated, in part, "We don't need to go up every [expletive] day, but the bottom line is, you know, we're [expletive] supporting the stock [ ]."

(Title 18, United States Code, Sections 371 and 3551 et seq.)

20

## COUNT TWO
(Conspiracy to Commit Mail Fraud and Wire Fraud –
the Manipulated Public Companies)

52.     The allegations contained in paragraphs one through forty-eight are

realleged and incorporated as though fully set forth in this paragraph.

53.     In or about and between October 2012 and July 2014, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, IRA

SHAPIRO, MATTHEW BELL, CRAIG JOSEPHBERG, also known as "Jobo," KYLEEN

CANE and VICTOR AZRAK, together with others, did knowingly and intentionally conspire:

a.     to devise a scheme and artifice to defraud investors and potential

investors in the Manipulated Public Companies, and to obtain money and property from them by

means of materially false and fraudulent pretenses, representations and promises, and for the

purpose of executing such scheme and artifice, to cause to be delivered matter and things by

FedEx Corp. ("FedEx") and other private and commercial interstate carriers according to the

direction thereon, contrary to Title 18, United States Code, Section 1341; and

b.     to devise a scheme and artifice to defraud investors and potential

investors in the Manipulated Public Companies, and to obtain money and property from them by

means of materially false and fraudulent pretenses, representations and promises, and for the

purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means

of wire communication in interstate and foreign commerce writings, signs, signals, pictures and

sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

21

## COUNT THREE
(Securities Fraud – CodeSmart)

54.     The allegations contained in paragraphs one through twenty-eight are realleged and incorporated as though fully set forth in this paragraph.

55.     In or about and between October 2012 and July 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, IRA SHAPIRO, MATTHEW BELL, and CRAIG JOSEPHBERG, also known as "Jobo," together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors or potential investors in CodeSmart, in connection with the purchases and sales of investments in CodeSmart, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNT FOUR
### (Securities Fraud – Cubed)

56.     The allegations contained in paragraphs one through thirteen and twenty-nine through forty are realleged and incorporated as though fully set forth in this paragraph.

57.     In or about and between March 2014 and July 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, MATTHEW BELL, CRAIG JOSEPHBERG, also known as "Jobo," KYLEEN CANE and VICTOR AZRAK, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors or potential investors in Cubed, in connection with the purchases and sales of investments in Cubed, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNTS FIVE THROUGH TEN
(Wire Fraud)

58.     The allegations contained in paragraphs one through forty-eight are realleged and incorporated as though fully set forth in this paragraph.

59.     In or about and between October 2012 and July 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, CRAIG JOSEPHBERG, also known as "Jobo," and VICTOR AZRAK, together with others, did knowingly and intentionally devise a scheme and artifice to defraud investors and potential investors in the Manipulated Public Companies, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises.

60.     On or about the dates set forth below, for the purpose of executing such scheme and artifice, the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, CRAIG JOSEPHBERG, also known as "Jobo," and VICTOR AZRAK, together with others, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, as set forth below:

| Count | Defendant(s) | Date | Description |
|---|---|---|---|
| FIVE | DISCALA and WEXLER | 05/09/2014 | Telephone call from DISCALA to WEXLER discussing, inter alia, the manipulation of Cubed's stock. |
| SIX | DISCALA | 05/09/2014 | Telephone call from DISCALA to Broker 1, an individual whose identity is known to the Grand Jury, discussing, inter alia, the manipulation of Cubed's stock. |

24

| Count | Defendant(s) | Date | Description |
|-------|--------------|------|-------------|
| SEVEN | DISCALA and AZRAK | 05/09/2014 | Telephone call from DISCALA to AZRAK discussing, inter alia, the manipulation of Cubed's and StarStream's stocks. |
| EIGHT | DISCALA | 06/12/2014 | Telephone call from DISCALA to Trader 1, an individual whose identity is known to the Grand Jury, discussing, inter alia, the manipulation of StarStream's stock. |
| NINE | DISCALA and JOSEPHBERG | 06/12/2014 | Telephone call from DISCALA to JOSEPHBERG discussing, inter alia, the manipulation of StarStream's stock. |
| TEN | DISCALA and WEXLER | 06/12/2014 | Telephone call from DISCALA to WEXLER discussing, inter alia, the manipulation of CodeSmart's, Cubed's and StarStream's stock. |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

61.     The United States hereby gives notice to the defendants ABRAXAS J.

DISCALA, also known as "AJ Discala," MARC WEXLER, IRA SHAPIRO, MATTHEW

BELL, CRAIG JOSEPHBERG, also known as "Jobo," KYLEEN CANE and VICTOR AZRAK

that, upon conviction of any of the above-charged offenses, the government will seek forfeiture,

in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States

Code, Section 2461(c), of any property, real or personal, which constitutes or is derived from

proceeds traceable to any of the above-charged offenses, including but not limited to the

following:

a.      real property and premises known as 10 Vincent Place, Norwalk,

Connecticut, and all proceeds traceable thereto.

62.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants ABRAXAS J. DISCALA, also known as "AJ Discala," MARC WEXLER, IRA SHAPIRO, MATTHEW BELL, CRAIG JOSEPHBERG, also known as "Jobo," KYLEEN CANE and VICTOR AZRAK:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____

FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY: _____
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. 0.136

26

F.#2013R01203
FORM DBD-34
JUN. 85

No. 13-0553

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*ABRAXAS J. DISCALA, et al.,*

Defendants.

## INDICTMENT

(T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18, U.S.C., §§ 371, 981(a)(1)(C),
1343, 1349, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

_____

*A true bill.*

_____
                                                    *Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
                                                    *Clerk*

*Bail, $* _____

_____

*Winston M. Paes, Assistant U.S. Attorney (718) 254-6023*