

U.S. Department of Justice

United States Attorney
Eastern District of New York

WMP:WMN
F. #2013R01203

271 Cadman Plaza East
Brooklyn, New York 11201

August 29, 2014

By Email and ECF

The Honorable Eric N. Vitaliano
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Abraxas Discala, et al.
                Criminal Docket No. 14-399 (ENV)

Dear Judge Vitaliano:

       The government respectfully submits this letter in response to the letter of defendant Abraxas Discala, also known as AJ Discala, filed August 20, 2014 (hereinafter "Def. Letter"), requesting that his bail conditions be modified so as to remove the requirement that he be subject to electronic monitoring with home detention. As explained in more detail below, the government respectfully submits that a permanent order of detention should be entered. In the alternative, the government respectfully submits that at minimum the Court should deny the defendant's request to alter the bail conditions of home confinement with electronic monitoring. There is no combination of conditions that could be imposed on Discala that would reasonably assure his presence in court. See 18 U.S.C. §§ 3142(b). There is a substantial risk of flight due to the overwhelming nature of the evidence against Discala, the lengthy jail term Discala faces if convicted, Discala's international ties and the millions of dollars in fraud proceeds earned by Discala (in addition to the significant wealth the defendant already possessed that would allow him the means to flee and live abroad comfortably). Furthermore, although the government initially contemplated bail conditions short of detention, as has become clear more recently and as set forth below, Discala cannot be trusted to abide by any bail conditions. A status conference in this case is scheduled for October 24, 2014.

### I.    Background

       Discala was arrested in Las Vegas, Nevada on July 17, 2014, for his role in coordinating the manipulation of several publicly traded stocks. The indictment charges him with securities fraud, wire fraud and conspiring to commit securities, wire and mail fraud, in

violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 18, United States Code, Sections 371, 1341, 1343 and 1349. On the date of arrest, the government filed a letter seeking Discala's detention (hereinafter "Prior Letter"), outlining the fraud and the strength of the government's evidence. See Docket Entry 3. As the Court previously indicated its familiarity with that letter, the government does not repeat those facts here.

On July 23, 2014, Discala appeared for the first time in the Eastern District of New York to be arraigned on the indictment. Before that appearance, the parties had discussions about a potential bail package that would include electronic monitoring. As stated in the Prior Letter, the government believed that Discala posed a very significant flight risk. However, as the information regarding Discala's lack of candor had not yet come to light, the government entertained Discala's argument that conditions short of detention might mitigate that risk. Ultimately, the parties could not agree on conditions and the court heard oral argument on the issue.[1] At the conclusion of the argument, the court ordered, among other things, electronic monitoring with home detention, understanding that the parties would further brief this issue to Your Honor.

Discala suggests that he suffered an injustice by remaining on home confinement and electronic monitoring until the date of the status conference before Your Honor, stating "[n]o such brief was ever submitted" by the government. See Def. Letter at 4. However, the briefing was in fact delayed at Discala's request. On July 23, 2014, after the oral argument, Discala asked the government to delay briefing so that he might consider the potential harm from public disclosure of the government's evidence of Discala's activities related to Scanbuy and weigh that against his wishes for lessened bail conditions. Then, on August 12, 2014 – just three days before the August 15, 2014, status conference – Discala's counsel sent the government an email stating, among other things, "please hold off on writing the court in opposition to our bail request[. W]e will let you know one way or the other by [T]hursday[, the day before the status conference]."

On August 13, 2014, Discala received a letter from Scanbuy, attached herein as Exhibit 1 ("Scanbuy Letter"), which stated, among other things, that (a) Scanbuy rejected Discala's request to reconsider terminating their business arrangement and (b) "[i]n light of Scanbuy's termination of its relationship with [Discala], any [] suggestion [that Discala

---

[1] Discala claims the government "reneged" on a bail agreement. See Def. Letter at 2. That is incorrect. The government never agreed to electronic monitoring conditions that would allow Discala to leave his home anytime time between 7:00 a.m. and 8:00 p.m. for any reason Discala desired. That would vitiate the purpose of electronic monitoring. To the extent Discala believed otherwise, it was a misunderstanding, a perceived meeting of the minds where no meeting existed. The government did consider conditions that would allow Discala to leave the home for legitimate employment reasons where Discala could be supervised, but Discala never disclosed to the government during those bail discussions that the sole purpose of his request to leave the home was to pursue purported business activities related to Scanbuy with no supervision of any sort.

2

needs to modify bail to pursue purported business activities with Scanbuy] would be a factual misrepresentation to the District Court." On August 14, 2014 – the day before the status conference – Discala finally informed the government that he definitively wanted to proceed with argument regarding bail.

On August 15, 2014, immediately following the status conference with all the defendants, the Court heard oral argument on this issue. On August 20, 2014, Discala filed the instant letter requesting that his bail conditions be modified so as to remove the requirement that he be subject to electronic monitoring with home detention.

II. <u>Argument</u>

A. **The Legal Standard**

Under the Bail Reform Act, Title 18, United States Code, Section 3141, <u>et seq</u>., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. <u>See</u> 18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). In determining whether the defendant should be released, the Court must consider whether "there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g).

The Bail Reform Act lists four factors to be considered in this analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. <u>See</u> 18 U.S.C. § 3142(g). A finding of risk of flight must be supported by a preponderance of the evidence. <u>See</u> <u>United States v. Chimurenga</u>, 760 F.2d 400, 405 (2d Cir. 1985).

B. **Discala Poses a Substantial Risk of Flight and Should Be Detained**

The government argued in its Prior Letter that Discala poses a substantial risk of flight and that no condition or combination of conditions would reasonably assure his future appearance. Those factors have not changed and new information makes the argument for detention even stronger. To summarize, the government's evidence against Discala is overwhelming, including unassailable wiretap recordings, text messages, financial records and information provided by multiple confidential sources. Discala is facing a substantial term of imprisonment if convicted, estimated under the applicable advisory United States Sentencing Guidelines (U.S.S.G.) to be 324 to 405 months, assuming Discala falls within Criminal History Category One.[2]

---

[2] This sentencing range assumes a total offense level of 41, based on a base offense level of 7 (U.S.S.G. § 2B1.1(a)(1)), plus 28 levels for an intended loss of over $200,000,000,

3

Discala has ties to foreign countries and, since 2010, has left the United States over a dozen times, traveling primarily to Europe, Canada and Mexico. Furthermore, Discala and his immediate family have little reason to stay in the U.S., as their personal assets are subject to forfeiture. Finally, Discala has the means to flee and hide, having profited handsomely from the charged scheme and having a net worth, as noted in the Pretrial Report, of $7 million, including a trust fund.

In addition, Discala's stated reason for seeking to escape from electronic monitoring and home detention is a "factual misrepresentation to the District Court." See Scanbuy Letter. That relationship has been terminated; there is no business for Discala to pursue on that matter.[3] Notably, Discala provides no information about these supposedly necessary meetings, with whom he would purportedly meet, why these persons could not be bothered to come to Discala's home for these allegedly important meetings, or the specific purpose of the meetings. This lack of candor with the Court shows that Discala cannot be trusted to abide by bail conditions and should be detained.[4]

Discala presents three arguments for why he should be allowed to remain on bail without home confinement or electronic monitoring. First, he argues essentially that the fact that he has not yet fled, despite having opportunities to do so, shows that he does not pose a flight risk. Def. Letter at 2, 4-5. Second, he notes that Pretrial Services has not recommended electronic monitoring and home confinement. Id. at 2. Third, Discala argues that he needs to work to support his family "as well as fund his defense." Id. at 3, 5. These arguments are unavailing and Discala's request should be denied.

---

(U.S.S.G § 2B1.1(b)(1)(M)), plus 4 levels for 50 or more victims (U.S.S.G. § 2B1.1(b)(2)(B)), plus 2 levels for the use of sophisticated means (U.S.S.G. § 2B1.1(b)(10)(C)). The intended loss based on the market capitalization of all four stocks listed in the indictment exceeds $300 million.

[3] The government still contends that Discala intended to commit additional fraud through the Scanbuy dealings. However, given that Scanbuy has concretely terminated its relationship with Discala, the government does not present evidence of that fraud in this letter.

[4] The government also notes that the wiretap revealed Discala unlawfully obtaining and using prescription pills, as well as unlawfully providing prescription pills to other individuals. The government is willing to provide a copy of these recordings to the Court or play them for the Court in camera, should the Court request. In yet another instance showing lack of candor, Discala did not disclose this information to Pretrial Services and instead claimed he had valid prescriptions for any pills he possessed. The fact that Discala has a drug habit is another reason why he poses a flight risk and cannot be trusted to adhere to bail conditions.

As to the first argument, there have been multiple instances in this district where individuals charged with financial crimes fled either shortly before or after trial. For example, in 2009, Julian Tzolov, a former Credit Suisse banker charged with fraud, cut his electronic bracelet and jumped bail shortly before his trial, and Tzolov remained a fugitive for over a month before he was arrested in Spain. 08 CR 370 (JBW). In another case, Thomas Qualls, a currency trader, jumped bail in 2008 during his trial and fought extradition from Canada for approximately four years before he was returned to this district. 07 CR 14 (DLI). These cases illustrate that defendants act on the impulse to flee as they come to the realization that they will not be able to avoid incarceration, which realization typically sets in closer to the trial date or before sentencing. Thus, the fact that Discala has not yet fled does not support his argument for lesser bail conditions and his request should be denied.

Second, the government respectfully submits that Pretrial Services was not aware of all the facts of this case, as detailed in this letter and the Prior Letter, when they evaluated Discala's flight risk. Pretrial Services depends on the defendant's disclosures to prepare their report and the report falters when the defendant is less than candid. To the extent Your Honor intends to rely on Pretrial Services's assessment, the government respectfully requests that Your Honor order Pretrial Services to prepare a new assessment and that Pretrial Services be provided this letter and the Prior Letter for review. Discala's reliance on Pretrial Service's previous determination, when he hid facts from their consideration, is misplaced and should not serve as the basis for a decision by Your Honor. [5]

---

[5] Notably, Discala's misrepresentations to the Court and to Pretrial Services highlight a danger posed by Discala's release that should be considered as well. Courts have recognized that the form of the danger to the community, in addition to physical harm, could include economic danger, particularly in cases of individuals who commit fraud. See, e.g., United States v. Reynolds, 956 F.2d 192, 192 (9th Cir.1992) (denying bail after mail fraud conviction because "danger may, at least in some cases, encompass pecuniary or economic harm"); United States v. Madoff, 586 F.Supp.2d 240, 252 (S.D.N.Y. 2009) ("the Court concludes there is support for considering economic harm in evaluating danger to the community"); United States v. LeClercq, 2007 WL 4365601, at *4 & n.5 (S.D.Fla. Dec. 13, 2007) (ordering detention for defendant arrested for mail and wire fraud under reasoning that "safety of the community [should] be given a broader construction than merely danger of harm involving physical violence"); United States v. Gentry, 455 F.Supp.2d 1018, 1032 (D. Ariz. 2006) (holding that "[d]anger . . . may be recognized in terms other than the use of force or violence" and ordering defendant detained after arrest for securities fraud); United States v. Stein, 2005 WL 3071272, at *2 (S.D.N.Y. Nov. 15, 2005) (reasoning that danger to the community includes potential economic harm to others if defendants were released on bail); United States v. Parr, 399 F.Supp. 883, 888 (W.D.Tex.1975) (holding that danger to the community language permits consideration of "defendant's propensity to commit crime generally, even where only pecuniary and not physical harm might result" and concluding that defendant "will continue to constitute a danger to the community so long as he is allowed to remain at liberty [because he could] continue to misappropriate the revenues and assets"). Given Discala's propensity for untruthfulness, there is reason to conclude that he presents such an economic danger and he should be detained.

5

Finally, as to the claim that Discala "need[s] to work" (Def Letter at 3), the earlier Pretrial Report, though not possessing complete information from Discala, still showed that he is far from destitute and undermines Discala's claim. Furthermore, such a claim cannot trump necessary bail conditions or detention for a defendant who presents a substantial flight risk, as does Discala. Similarly, while the Sixth Amendment guarantees a defendant's right to counsel in a criminal case, it does not guarantee the right to counsel of his choosing. Put simply, Discala's need to fund the present counsel cannot trump necessary bail conditions or detention.

### III.  Conclusion

For these reasons, the government respectfully requests that Your Honor enter a permanent order of detention for Abraxas Discala. In the alternative, at a minimum, the government respectfully submits that Your Honor should not amend the bond conditions.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:      /s/
Walter M. Norkin
Shannon C. Jones
Winston M. Paes
Assistant U.S. Attorneys
(718) 254-6152 (Norkin)

Encl.

cc: Joseph Tacopina, Esq. (by ECF and Email w/Encl.)